## PULLMAN CO. v. LOPEZ. (No. 7454.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 16, 1925.)

**1. Carriers ⊂⇒416—Allegations of negligence in compelling plaintiff to leave berth and stand in vestibule of train held not sustained by evidence.**

In passenger's action against carrier, alleged negligence in compelling plaintiff to leave berth and stand for hours in vestibule of train, causing plaintiff to contract pleurisy, *held* not sustained by proof that plaintiff was compelled to leave berth, which proof was not of itself sufficient to sustain charge of negligence that was proximate cause of injury.

**2. Carriers ⊂⇒412—Act of passenger in standing in cold vestibule after ejection from sleeping car berth held contributory negligence.**

That woman passenger ejected from sleeping car berth willfully and unnecessarily stood in cold vestibule *held* contributory negligence, barring recovery for pleurisy alleged to have been contracted.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Lola Lopez against the Pullman Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Guinn & McNeill, of San Antonio, for appellant.

Dwyer & Russell, of San Antonio, for appellee.

FLY, C. J. This is an action for damages by appellee against appellant, alleging that on the night of December 28, 1923, she was a passenger on a Pullman sleeping coach on its way from Del Rio to San Antonio; that she and a companion, Margarita Mayen, sought to obtain from the conductor a lower berth in a tourist car, but were told that he had no lower berths but could give them an upper berth. They demurred to this, and a young man who occupied lower 5 offered his berth, and the exchange was made and ratified by the conductor, and the women paid him $1.50 for the upper berth which was to be given to the young man. They retired, and shortly thereafter the conductor told them they must get out of the lower berth. They remonstrated, and he permitted them to stay, but afterward returned and compelled them to leave the lower berth. The petition proceeds:

"That in obedience to the orders of said conductor, and over plaintiff's protest, she was obliged to leave said berth and retire to the vestibule of said car, where she remained from said time, which plaintiff believes to be about 11 p. m., to the time that she arrived in San Antonio the following morning, about 3:30 a. m."

Again it was stated:

"Plaintiff alleges further that by reason of being ordered out of her berth and required to make the journey from Del Rio to San Antonio in the vestibule of said car, as aforesaid, and the exposure caused therefrom, she contracted pleurisy in her left side, which has caused her much pain and suffering and as a result thereof her health was and is greatly impaired, that she has suffered great mental and physical pain, and will in the future be a great sufferer, and the said injuries are serious and permanent. That all of said injuries were caused entirely by the negligence of defendant, its agents and employees, in ejecting plaintiff from said lower berth 5, and requiring her to make the journey in the vestibule of said car, as aforesaid."

The cause was submitted to a jury on special issues, and on the responses thereto judgment was rendered in favor of appellee for $2,250.

Appellee and her companion, Mrs. Mayen, a cousin, swore that they were ordered to leave the lower berth, but neither testified that they had been ordered by the conductor to go to the vestibule as was alleged. Their testimony was that the conductor ordered them to go into an upper berth. Appellee testified that the conductor asked them why they did not go to bed. She said she went into the vestibule because she had paid for the bed and that she ought to have stayed in bed and not outside. She swore:

"Neither the train conductor nor the Pullman conductor told me to go out in the vestibule. He merely said, 'Get out of the bed.' I don't know where he told us to go. We went out on the vestibule because he put us out of the berth. He didn't tell us to go to the vestibule. * * * I do not mean to say that the Pullman officials or employees told me to go out in the vestibule. Yes, I was mad about having to get up, and was mad at the Pullman conductor."

She did not deny that the train conductor told her to go to the observation car where she would be comfortable. The young man who gave her his berth insisted on her going back to it, but she would not do it. She admitted this. Margarita Mayen, the companion of appellee, testified that she had sued for the same sum claimed by appellee. She swore that the conductor came to them after they left their berth and asked them to go back. They voluntarily remained in the vestibule.

Appellee and Margarita were the only witnesses for appellee. The young man who gave his berth to them contradicted them sharply in several respects. He testified that when he saw them they were not in the vestibule between two cars, but in the aisle of the sleeper. He tried at least twice to get them to go to their berth, but they would not. They gave no reason for standing up.

[1] The evidence failed to sustain the allegations of negligence, which were that ap-

pellant had forced the two women to leave their berth and stand for hours in the vestibule. The case was not made out by proof of appellee being compelled to vacate her berth, but it required not only proof of that fact, but of the further fact that she was compelled to stay in the vestibule outside of the sleeper. There was no evidence that appellee was forced to occupy the vestibule, although the hypothetical questions put to the two physicians were predicated on proof of that fact. The court in his special issues ignored the allegations as to the occupation of the vestibule, although without proof of that circumstance no case was made, but based a recovery on proof of the conductor having demanded that appellee vacate her berth. That proof alone under the pleading did not sustain a charge of negligence that was the proximate cause of the injury to appellee. It required proof not only of an eviction from the berth but of appellee being forced to remain in a cold vestibule. The case alleged was not sustained by the evidence or submitted to the jury.

[2] Not only did the evidence fail to sustain the allegations of negligence upon the part of appellant, but they strongly tend to show that if appellee contracted any cold on the sleeper, it was proximately caused by her own acts in willfully standing in a cold vestibule. We fail to understand how a jury, in the face of the uncontradicted testimony, could find that appellee was not guilty of contributory negligence which caused her sickness, if any resulted from her ride on the sleeper.

The testimony is unsatisfactory on the question of what caused the sickness of appellee. Mrs. Mayen testified:

"We left San Antonio together the same night, arrived at Sanderson next morning between 5 and 6 o'clock. We traveled, going to Sanderson, in the day coach. We sat up all night going out to Sanderson, did not sleep any, nor did we sleep any the next day. Stayed one night in Sanderson, but did not sleep any, so this made two nights without any sleep."

This lack of sleep for 48 hours may have had some connection with the after sickness and may have produced it. Dr. Ward testified to an examination of appellee on morning. of December 28, the morning she returned to San Antonio, and found that she had pleurisy in the side. If she took cold from standing in the vestibule of the car, it must have developed in seven or eight hours, if it came from the exposure on the train. He gave symptoms of a disease long in existence, because he said that the air cells of the lungs and pleural cavity were glued together with inflammation. In answer to a hypothetical question as to what would be the consequences of a woman standing in the closed vestibule of a car for three or four hours, in cold weather, he said:

"I would not like to predicate an opinion there, because I don't know; I did not see those bellows-like things that hold the car together; they might have been perfect, and they might not have been; there might not have been a possibility of a draft of air going through for all I know; I never saw it."

When pressed to state whether standing in the vestibule for several hours when it was cold might have possibly caused the pleurisy, he answered:

"Inasmuch as pleurisy is caused by a cold or a draft, if it was cold enough, and if there was a draft it could, yes."

The doctor further stated, when he saw the appellee on the morning of December 28, that the air cells of her lungs and pleural cavity were "glued together with inflammation," and that such inflammation of the lungs could not have developed the day the exposure took place. The other doctor, Omer Roan, swore that pleurisy was rather slow in forming. When asked if a person standing in a car vestibule closed, in "very cold weather," could contract pleurisy, he answered:

"If it is very cold, and she stood in a cold place for quite a while, it would be possible for it to cause bronchitis."

It was not shown that the weather was very cold but, on the other hand, there was testimony tending to show that it was not cold. This was the testimony connecting the sickness of appellee with her occupancy of the vestibule.

The circumstances detailed by appellee and Margarita Mayen present a singular case. Briefly stated, it was shown by their testimony that they entered a tourist car, after riding from Sanderson to Del Rio in a day coach, and asked the conductor for a lower berth, and were told that all the lower berths were occupied but they could get an upper. They stated they could not use the upper berth because of some ailment of Mrs. Mayen, and a young man near by said they could have his lower berth and he would take the upper. This was agreeable to the conductor, and appellee and her companion paid for an upper berth but were exchanged to Massoni's lower berth. Everything was agreeable at this time and every one satisfied. The women retired in the lower berth, and in a short while the conductor came and told them they must get up and get in the upper berth. They remonstrated, and Massoni joined in the remonstrance, and the conductor said, "All right," and left. After the women were asleep, the conductor aroused them and told them they must leave the lower berth and get in the upper. They demurred to this, and the young man, Massoni, told the conductor to let the women alone as he had paid for the berth and they were entitled to it. He insisted and made the

women leave the lower berth. This was the version given by the two women, but it was not sustained by Massoni, who testified that he knew nothing of the women having left the berth until he saw them standing in the aisle, and that was before he had occupied his upper berth. They gave him no reason for having left the berth. At neither of the visits of the conductor to the lower berth was a reason demanded for his conduct, nor did he offer any reason or excuse for desiring to have the women vacate a berth paid for by Massoni and which with the consent of the conductor had been assigned to the two women. The conductor and porter contradicted the testimony of the women.

The lower court and this court are asked to believe that with aimless brutality and utter disrespect for the two women the conductor expelled them from their berth.

Another suggestive phase of the case is presented by the fact that the appellee, and presumably her companion, in a short time after reaching San Antonio, summoned the aid of a doctor and a lawyer, and presumably both of the women suffered the same damages, for each filed a suit for the same amount of damages.

The inconsistencies and unreasonableness of much of appellee's testimony would not, standing alone, cause this court to reverse the judgment of the lower court; but when such inconsistencies are coupled with testimony showing contributory negligence and with a failure of the court to present the issue of negligence as made by the pleadings, this court will not permit the judgment to stand.

The judgment is reversed, and the cause remanded.